UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL CHRISTY SUMNER,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. 17-cv-13242 |
| | | Honorable Nancy G. Edmunds |
| v. | | Magistrate Judge David R. Grand |

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration,

Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 13]

Plaintiff Rachel Christy Sumner ("Sumner") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #10, 13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Sumner is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Sumner's Motion for Summary Judgment (**Doc. #10**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

1

### A.  Background

Sumner alleges disability as a result of diabetes, foot fracture, diabetic retinopathy, cataracts, neuropathy, lower back pain, ingrown toenail, status post fracture of right first metacarpal, and depression.  (Tr. 13, 47, 49, 183, 193).  Her alleged onset date is August 28, 2014.  (Tr. 36).  She was 46 years old at the time of her alleged onset date.  (Tr. 6).  Sumner had submitted a prior application for disability benefits, which was denied by the ALJ on July 19, 2012, and by the Appeals Council on September 13, 2013.  (Tr. 77-101).  Her instant SSI application was denied initially on December 1, 2014.  (Tr. 111).

She requested a hearing before an ALJ on February 17, 2015; however, this request was not timely filed, as it was filed beyond the prescribed 60-day limit.  (Tr. 124).  After Sumner submitted a statement of good cause for the delay, a hearing was held on February 19, 2016, before Administrative Law Judge Carol Guyton ("ALJ").  (Tr. 27, 125).  Sumner, represented by counsel Andrea Hamm, testified at the hearing, as did Vocational Expert ("VE") John Harrison.  (Tr. 27).  Sumner received an unfavorable decision dated August 3, 2016.  (Tr. 7-25).  She timely requested review on August 12, 2016, and the Appeals Counsel denied her Request for Review on September 5, 2017.  (Tr. 1-6).  Sumner timely filed for judicial review of the final decision on October 3, 2017.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Sumner's medical records, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.  ALJ application of disability framework

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to

2

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Sumner is not disabled under the Act. At Step One, the ALJ found that Sumner had not engaged in substantial gainful activity since the application date. (Tr. 12). At Step Two, the ALJ found that Sumner has the

following severe impairments: diabetes mellitus, non-proliferative diabetic retinopathy, peripheral neuropathy lower extremities, ingrown toenail with bilateral great toes, status post fracture of right first metacarpal, and affective disorder.  (Tr. 13).  At Step Three, the ALJ found that Sumner's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Sumner's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, except she can only lift and carry 5 pounds frequently and occasionally; she can have no exposure to extreme cold, heat, wetness, or humidity; no exposure to hazardous machinery, unprotected heights, or ladders, ropes, or scaffolds; she can read typical newspaper print, but not lesser pica; and she can perform simple, routine tasks involving no more than simple, short instructions, and simple work related decisions with few work place changes.  (Tr. 15).  At Step Four, the ALJ found Sumner has no past relevant work.  (Tr. 20).  Finally, at Step Five, considering Sumner's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Sumner can perform.  (Tr. 20).

### C.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.  Analysis

In her motion for summary judgment, Sumner argues that the ALJ erred: (1) by not obtaining an updated consultative examination after the State agency medical consultant reviewed the case in 2014, since medical records were subsequently added to her file; (2) by not obtaining a psychological or psychiatric consultative evaluation; (3) in determining Sumner's RFC, both as to its mental limitations and as to the ALJ's rationale for the complete RFC; and (4) by failing to

provide a function-by-function assessment.  Each issue is addressed below.

       *1.*  *The ALJ's Decision Not to Obtain an Updated Medical Opinion Was Not Reversible Error*

A State agency medical consultant reviewed Sumner's case on November 26, 2014.  (Tr. 102-10).  Since that time, according to Sumner, "over 215 pages of new medical reports were added to the record."  (*See* Doc. #10 at 14).  Accordingly, the ALJ gave the 2014 consultant's assessment only partial weight, explaining as follows,

> As for the State agency medical consultant's physical assessment, the undersigned gives it partial weight.  At the time of the November 2014 assessment, the consultant assessed that by August 2015, the claimant would be capable of sedentary work with the ability to lift and carry up to 5 pounds frequently.  However, the undersigned finds, medical evidence subsequent to the assessment demonstrates the claimant was capable of sedentary residual functional capacity prior to August 2015.  In fact, the record demonstrates beginning January 2015, the claimant could return to work.  There has been little change in the claimant's objective findings since January 2015 and the claimant is able to work, travel, perform household chores and drive.  Furthermore, the undersigned finds environmental limitations due to exacerbation of symptoms.  Therefore, the consultant's assessment is given partial weight.

(Tr. 20).

Relying principally on SSR 96-6p, Sumner contends that the ALJ erred in declining to order an updated medical examination, "given the voluminous new medical evidence added to the record since the State agency medical consultant reviewed the physical aspects of the case on November 26, 2014."  (Doc. #10 at 14).  SSR 96-6p provides, in relevant part,

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> * When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> * When additional medical evidence is received that *in the opinion of the*

> *administrative law judge or the Appeals Council* may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (emphasis added).

Sumner's argument lacks merit for several reasons.  First, as the Commissioner correctly points out, there is a subjective component expressly codified in SSR 96-6p, leaving the decision whether to obtain an updated medical opinion to rest with the ALJ.  *See Courter v. Comm'r of Soc. Sec.,* 479 F. App'x 713, 723 (6th Cir. 2012) ("SSR 96–6p thus requires that the ALJ obtain an updated medical opinion *only* when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment.") (internal citations omitted) (emphasis in original).  Sumner does not acknowledge the discretion given to the ALJ in the regulation, and instead simply mischaracterizes the regulation, arguing, "[a]ccording to SSR 96-6p, the ALJ *should* obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the State agency medical consultant's finding [ ]." (Doc. #10 at 13) (emphasis added).

The case law on which Sumner relies is similarly unpersuasive.  Sumner relies on *Manus v. Comm'r of Soc. Sec.*, No. C-1-08-243, 2009 WL 2983051, at *9 (S.D. Ohio Sept. 11, 2009), for the proposition that the ALJ should have obtained an updated medical opinion.  In *Manus*, a therapist began treating the claimant after an initial evaluation.  The therapist then completed an MRFC form suggesting the claimant's impairments met a listed impairment, due to marked and extreme restrictions/difficulties in the functional areas.  (*Id.*).  The instant case is distinguishable because here there is no new opinion evidence after 2014 showing Sumner met a listed impairment. In fact, the opposite is true; one of Sumner's physicians, Dr. Zahari, cleared her to return to work on January 20, 2015.  (Tr. 50, 359).  As explained below, Sumner's medical records submitted

after the 2014 evaluation did not support her allegation of disability, nor did they suggest that an updated opinion was needed to reevaluate her conditions.  As such, substantial evidence supports the ALJ's decision not to order an updated evaluation.

Sumner's previous evaluation, conducted by Dr. Hahn on November 26, 2014, reflects the following conditions: diabetes, nonproliferative diabetic retinopathy; cataracts in both eyes; neuropathy; cellulitis edema fracture in right foot; 3 thyroid nodules, with one cyst; and anemia. (Tr. 103).  The evaluation considers many of the same issues and limitations Sumner currently alleges, such as difficulty walking, foot pain, retinopathy, cataracts, neuropathy, cellulitis, foot ulcers, and foot abscesses.  (Tr. 105-8).  Although Sumner contends, "[t]he [new] medical evidence clearly shows a worsening of [her] medical condition," she fails to indicate exactly how her medical conditions worsened, let alone worsened to such an extent that her impairment(s) would qualify as a listed impairment.  (Doc. #10 at 15).  Instead of providing detail as to the changes in her conditions, Sumner simply writes, "many [current] impairments were not even referenced in the records reviewed by the State agency medical consultant," then invites the Court to "[c]ompare ALJ decision at page 9 with Exhibits B5F, B6F, B7F, B8F, B9F, B10F, B11F, B12F, B13F, B14F, B15F, B16F, B17F, and B18F."  (Doc. #10 at 14).[1]  However, an independent review of the medical records supports the ALJ's analysis that "[t]here has been little change in [Sumner's] objective findings," rather than showing  "worsening condition[s]," as she alleges.  (Tr. 20).

Many of the late 2014/2015 medical records contain notes from seemingly routine follow-

---

[1] The Commissioner persuasively argues that Sumner's arguments should be deemed waived, as "[s]he does not directly state which impairments the state agency consultant did not consider; but instead lists nearly all the exhibits in the medical exhibits in the record and asks this Court to compare it with the ALJ's decision."  (Doc. #13 at 9).  While Sumner's counsel should avoid making such vague arguments in the future, the Court will nonetheless address Sumner's arguments on the merits.

up appointments managing the same, or similar, conditions indicated on the 2014 evaluation.  For example, many treatment notes reflect only standard follow-up, continuation of care, lab work, or refilling medication — not treatment for worsening conditions.  (*E.g.*, Tr. 436, 459, 481, 487, 496, 515-16, 614-15, 641-44, 655, 657, 58).  Perhaps most indicative of Sumner's improvement, and most damning to her argument of worsening conditions, is the fact that she was cleared to return to work on January 20, 2015, and she subsequently reported ample exercising, movement, and activity throughout 2015 and 2016.  Dr. Zahari, one of Sumner's treating physicians at Southgate Foot and Ankle Center, indicated in treatment notes that Sumner "is ready to return to work."  (Tr. 359).  On September 2, 2015, Sumner "reports she has been exercising daily via walking, riding her bike, and exercising in the house… [Sumner] states she has been doing crunches and is up to 90 per day.  She is also doing toe touches and lunges."  (Tr. 502).  On January 8, 2016, Sumner reported "she is exercising 5 days per week.  She is doing mostly stretching exercising.  She has also been given by the exercise coach sitting exercises to perform."  (Tr. 520).  Sumner was also instructed by both her doctors, and an exercise coach, to exercise throughout 2015 and 2016.  (*E.g.*, 439, 463, 520).  The aforementioned medical records demonstrate that Sumner's conditions did not warrant a new medical evaluation.

Nonetheless, Sumner argues that, because the ALJ acknowledged a change in her conditions, an updated medical opinion should have been obtained.  However, Sumner's argument fails to mention the significance of any change in her conditions.  Although some of Sumner's conditions changed since 2014, her medical records did not indicate severe or dramatic changes that would cause any impairment to qualify as a listed impairment in Step Three.  For example, on January 28, 2016, Sumner sought medical care due to a bump on her right hand, with no associated pain.  (Tr. 528).  Sumner also repeatedly sought vitamin B12 injections for vitamin B12 deficiency.

(*See* Tr. 500, 502, 627, 664, 666, 702).  She also sought medical care for stomach bloating, (Tr. 509), fatigue, (Tr. 704), "swollen nasal turbinates" (Tr. 652), and problems with her right ear (Tr. 496).  While the ALJ reviewed these records in her decision, none of these changed conditions necessitate an updated medical evaluation, as they show only isolated, passing, minor conditions, rather than an indication of disability.

Hypertension and hyperlipidemia were other new conditions noted throughout 2015.  (Tr. 441, 456-57, 515).  But, as the ALJ explained in her Step Two analysis, the record does not show those conditions were "severe impairments," let alone listed impairments because they do not cause more than a minimal effect in [Sumner's] ability to perform basic work activities" and were "fairly well controlled" with medication.  (Tr. 13).

As to Sumner's eye issues, medical records from August 2015 indicate her retinopathy is "mild," with no macular edema, and sclerosis and cataracts are "early."  (Tr. 721).  Notes further indicate such conditions should be "observed," but are "stable," and do not indicate any functional limitations, or increasing severity.  (*E.g.*, Tr. 715, 716, 721, 725-26).

Sumner developed an ingrown toenail in 2015.  (Tr. 534-49).  However, as the ALJ explains in her decision, it did not appear restrictive, as it did not interfere with her activities of daily living.  (Tr.17-18).  Further, exam notes showed her muscle strength was 5/5 for all muscle groups tested on both lower extremities, and no pain to palpation. (Tr. 547).  No functional limitations were suggested in her treatment notes.  (Tr. 534-49).  Clearly, Sumner's ingrown toenail did not require the ALJ to obtain an additional evaluation.

Sumner also had other new conditions concerning her foot, such as swelling, a blister, an abscess, and an ulcer.  (Tr. 50-52, 436, 481).  However, the treatment notes of Sumner's physician, Dr. Gambel, only periodically reflect these various foot conditions.  For example, no foot-related

conditions were noted on the notes from the following dates: September 2, 2015, (Tr. 450-51); October 23, 2015, (Tr. 452-54); December 2, 2015 (Tr. 459-60); or January 28, 2016 (Tr. 469-70). When Dr. Gambel does discuss Sumner's foot-conditions, he notes progress, such as her ulcer is "well healing," and wearing a boot helped to heal her fracture. (Tr. 481).

Depression is another new condition, which was not analyzed in the 2014 evaluation. But, as will be discussed in detail *infra,* the record evidence regarding depression did not suggest the need for a consultative evaluation. In sum, the record evidence reflecting Sumner's new medical conditions since 2014 support the ALJ's decision not to order an updated evaluation.

Finally, as the Commissioner persuasively argues, "[Sumner] failed to specifically identify evidence that would support a finding that her impairments met or medically equaled a listing; she failed to even identify what listing she allegedly equaled. And nothing in the ALJ's decision indicates that the new evidence demonstrated that [Sumner's] condition equaled the severity of the listing." (Doc. #13 at 9). Sumner also does not present any argument as to why the voluminous medical evidence of record, itself, was inadequate to apprise the ALJ of her recent conditions. Sumner bears the burden to show her impairment(s) equaled a listing, and she failed to meet her burden here. *See Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014) ("Plaintiff bears the burden of establishing that he meets a particular listing and plaintiff's argument in this regard is not sufficiently developed such that the undersigned can make such a determination. Plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."). As such, the Court finds no reversible error in the ALJ's decision.

   2. *The ALJ Did Not Err in Declining to Obtain a Consultative Examination for Sumner's Mental Impairments*

The ALJ found Sumner suffered from the severe mental impairment of affective disorder.

(Tr. 13). At Step Three, the ALJ considered the severity of Sumner's mental impairment within the following four areas, the "paragraph B" criteria: activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. (Tr. 13-15). Ultimately, the ALJ found that the "paragraph B" criteria were not met, because Sumner's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation. (Tr. 14). The ALJ then analyzed Sumner's mental impairments, and treatment, in her RFC analysis. (Tr. 17-18). Nonetheless, Sumner argues the ALJ erred in failing to obtain a psychologist or psychiatrist consultative evaluation, citing 20 C.F.R. §404.1503(e), which tracks 42 U.S.C. §421(h).

Section 404.1503[2] states, in relevant part,

> (e) Initial determinations for mental impairments. An initial determination by a State agency or the Social Security Administration that you are not disabled (or a Social Security Administration review of a State agency's initial determination), in any case where there is evidence which indicates the existence of a mental impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

20 C.F.R. § 404.1503.

Sumner's argument lacks merit for two main reasons: first, the ALJ's decision was not an *initial determination*, and second, Sumner has not presented adequate evidence showing any mental impairment causing limitations.

As this Court has previously held, an ALJ's decision is not an "initial determination," eliminating the applicability of the cited regulation. *See, e.g., Moon v. Comm'n of Soc. Sec.*, No. 16-13732, 2018 WL 1406840, at *3 (E.D. Mich. Mar. 21, 2018) ("As the ALJ's review in this case

---

[2] This law has since been revised. The revised version became effective March 27, 2017, after Sumner filed her claim. The language cited herein was in effect at the time of Sumner's hearing.

was not an initial determination under subsection (a), (c), (g), or (i), § 421(h) did not apply to the proceedings before the ALJ.  It follows that the ALJ did not violate that statutory provision in not having a psychiatrist or psychologist evaluate [claimant's] mental health."); *see also Ford v. Comm'r of Soc. Sec.*, No. CV 16-11725, 2017 WL 9477652, at *4 (E.D. Mich. Jan. 31, 2017), *report and recommendation adopted,* No. 16-11725, 2017 WL 908299 (E.D. Mich. Mar. 8, 2017) ("It is clear, then, that the regulations [ ] on their face, apply only to *initial* determinations for mental impairments.").  Further, the regulation indicates such psychiatrist or psychologist review, if necessary, would *precede* an initial determination.  (*See* § 404.1503(e) ("An initial determination … will be made *only after* every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment") (emphasis added)).

Although Sumner argues that the "ALJ has an affirmative duty to develop the record," citing case law from other courts, such duty arises only if sufficient evidence on the record warrants further development.  The Sixth Circuit has held that an ALJ's failure to further explore an impairment is not reversible error when there is insufficient evidence in the record showing such impairment prevented a claimant from working.  *See Marcum v. Comm'r, Soc. Sec. Admin.*, 205 F.3d 1341 (6th Cir. 2000).  Here, like in *Marcum*, there was insufficient evidence on the record of limitations resulting from Sumner's mental impairments, such that there was no reversible error in the ALJ's decision not to obtain a consultative examination.  Notably, Sumner did not indicate depression, anxiety, or any other mental impairment on her function report dated September 23, 2014.  (Tr. 176-83).  Although medical records indicated Sumner's diagnosis of depression, "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual."  *Dukes v. Comm'r of Soc. Sec.*, No.

1:10-CV-436, 2011 WL 4374557, at *6 (W.D. Mich. Sept. 19, 2011) (quoting *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000)). Also, although depression was noted in certain treatment notes, other treatment notes deny Sumner's depression. (*See, e.g.*, Tr. 328, 362, 259, 366, 312). Even if substantial evidence supports the opposite conclusion, if there exists substantial evidence on record supporting the ALJ's decision, it must be affirmed. *Cutlip*, 25 F.3d at 286.

Additionally, when questioned about her depression at the hearing, Sumner testified that she would get tired a lot, and "sometimes I don't want to get out of bed." (Tr. 47, 53). When asked about any other symptoms from depression or resulting limitations, Sumner responded only that her eyes would get "wonky" sometimes while reading or coloring. (Tr. 53-54). When the ALJ explicitly asked about "any other reason" that would prevent her from working, Sumner did not mention any additional limitation arising from mental impairments. (Tr. 56). The hearing testimony, therefore, further supports the decision not to obtain a consultative examination for Sumner's mental impairments. Moreover, as the ALJ considered Sumner's affective disorder "severe," and (for the reasons discussed herein) appropriately considered the impact of *all* Sumner's mental impairments on her RFC and ability to work (Tr. 17, 19), any potential error in this regard would be harmless. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("[E]ven if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of [the plaintiff's] impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless.").

Lastly, Sumner reported enhanced depression symptoms in April 2015, when she ran out of Celexa, her medication for depression. (Tr. 481). At that time, she explained that "she would be better on medication," and will seek therapy. (*Id.*). As the ALJ discussed, "[r]egarding

[Sumner's] diagnosis of depression, [] she has reported significant improvement in her energy level and symptoms with the use of medication." (Tr. 19). The ALJ further noted, "[w]ith ongoing supportive therapy, it was noted [Sumner] appeared less tense." (Tr. 17). This Court has previously held that "an impairment that can be remedied by treatment will not serve as a basis for a finding of disability." *Harris v. Heckler*, 756 F.2d 431, 436 (6th Cir. 1985) (citing *Henry v. Gardner,* 381 F.2d 191, 195 (6th Cir.1967)); *see also* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."). Again, this shows that the ALJ did not err in failing to further develop the record as to Sumner's depression.

### 3. *The RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ found that Sumner retains the RFC to perform sedentary work, with the additional restrictions that she can only lift and carry 5 pounds, have no exposure to extreme temperatures or hazardous machinery, she can read only typical newspaper print, and can perform simple, routine tasks that involve 1,2,3 instructions, with few work place changes. (Tr. 15). The ALJ noted that the record evidence shows Sumner's limitations are not as severe as she alleges. For example, the ALJ noted that, despite Sumner's allegations of severe leg, foot, and back pain, "[o]n September 2, 2015, [Sumner] reported exercising daily via walking and riding her bike," and her "[e]xamination remained normal." (Tr. 17). Similarly, the ALJ explained, "in January 2016, [Sumner] reported that she was exercising five days a week, doing mostly stretching exercises and having no new complaints," and "started a new job that involved caring for a family friend." (*Id.*). The ALJ further noted Sumner reported her highest pain level to be a 5 out of 10, and did not take pain medication, both of which were inconsistent with her allegations of severe pain. (Tr. 18). Further, she "did not allege to her doctors that these impairments interfered with

her ability to engage in activities of daily living including an exercise program or traveling to Texas for an entire month." (*Id.*). Finally, the ALJ noted Sumner's "complaints of wonky vision are not fully supported," as "the record demonstrates she has 20/20 corrected vision." (*Id.*).

In formulating Sumner's RFC, the ALJ also discussed, in detail, Sumner's history of foot conditions, including the removal of infected bone on June 14, 2014. (Tr. 16). The ALJ noted that follow-up examinations for that, and other foot conditions, culminated in Sumner reporting she was ready to return to work on January 20, 2015. (*Id.*). The ALJ also considered Sumner's diabetes, eye issues, and mental impairments, including Sumner's reports to Dr. Gambel about depression and mental health treatment, as mentioned earlier. (Tr. 16 -18).

Sumner now advances several challenges to the ALJ's RFC finding. First, Sumner argues that the ALJ erred in evaluating her mental RFC. However, the very premise of Sumner's argument is flawed as she incorrectly describes the ALJ's finding. Sumner argues, "[w]hile the ALJ found that Plaintiff has several severe psychiatric mental impairments of schizoaffective disorder, depression, mild intellectual disability, intermittent explosive disorder and anxiety, her RFC assessment does not consider the impact of these impairments on functional ability as required by SSR 96-8p." (Doc. #10 at 17). But the ALJ made no such finding. (*See* Tr. 13). Rather, the ALJ found Sumner had a severe impairment of affective disorder, and proceeded to evaluate her mental impairments, with a focus on depression, in the RFC analysis. (Tr. 17-18).

Beyond this, Sumner "gives no indication what additional restrictions might be necessary to accommodate [her] conditions, but merely mentions the possibility that the ALJ *could have* included more restrictive limitations in [the] RFC assessment." *Berry v. Comm'r of Soc. Sec.*, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) (emphasis in original). Where Sumner bears the burden of showing greater limitations stemming from any mental impairments, and where she

has failed to articulate any such limitations, her argument fails.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F. 3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").

Sumner next argues that the ALJ's RFC finding is not supported by substantial evidence because it "is simply conclusory," and "nowhere in the ALJ's decision does the ALJ outline the medical evidence and/or testimony that she relied upon in coming to her conclusions concerning [Sumner's] mental and physical RFC."  (Doc. #10 at 22).  In support of this argument, Sumner points only to the final sentence in the ALJ's RFC analysis, which summarizes and concludes her RFC determination.  Sumner does not address the detailed RFC analysis preceding the conclusory sentence.  (*See* Tr. 15-20).  The ALJ adequately explained her rationale, explaining that the normal findings in Sumner's medical records and her activity level contradicted her indications of severe symptoms and resulting limitations.  (*See id.*).  This argument, therefore, fails.

In sum, substantial evidence supports the ALJ's RFC determination.

### 4.  There Was No Error in the ALJ's Lack of Function-by-Function Assessment

Finally, Sumner argues that the ALJ did not comply with SSR 96-8p by failing to include a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling).  But, the Sixth Circuit has expressly rejected this very argument, stating:

> Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing… [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted)).

Here, the ALJ discussed Sumner's reports of regular exercise, indication she was "ready to

17

return to work" in 2015, and medical records showing the improvement and mild nature of Sumner's conditions, all of which fail to support her allegations of severe limitations in the seven strength demands.  For example, the ALJ noted how "the record demonstrates…Sumner denied pain symptoms… ambulated with a normal gait," and eventually, "she did not exhibit decreased muscle strength or an abnormal gait that inferred with her ability to engage in an exercise routine." (Tr. 18).  Further, the ALJ explained in detail how "the record fails to support [Sumner's] allegations" that she can only sit for 30-45 minutes, as she reported exercising, reading and coloring throughout the day, and traveling to Texas to see her father, which "suggest[] she is capable of sitting for more than 45 minutes."  (*Id.*).  The ALJ also described how "[Sumner's] symptoms of neuropathy may impair her ability to lift," but found that "she acknowledged she was able to do laundry, clean throughout the week, and grocery shop, which do not support the inability to lift." (*Id.*).[3]  No more was required of the ALJ.  *See White v. Colvin*, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p.").

For all the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Sumner's Motion for Summary Judgment (**Doc. #10**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

---

[3] Indeed, during the hearing before the ALJ, Sumner testified that she is "up and down the steps all day doing laundry" every two weeks at her mom's house.  (Tr. 48).  She also testified that she could "dust and clean the bathroom, vacuum and then the next day [] mop the floors."  (*Id.*).

Dated: January 2, 2019                          s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 2, 2019.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager